Mary V. York (ISB #5020)
Julie A. Hamilton (ISB #11708)
Sam C. Kidd (Wyo. State Bar # 8-6879) *pro hac vice* forthcoming
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
myork@hollandhart.com
jahamilton@hollandhart.com
sckidd@hollandhart.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| GAS TRANSMISSION NORTHWEST, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>POST FALLS STORAGE SOLUTIONS, LLC, NORTHWEST GRADING, INC. and WILLIAM J. KRICK,<br><br>Defendants. | Case No. _____________<br><br>**VERIFIED COMPLAINT** |

Gas Transmission Northwest, LLC ("GTN"), through its counsel of record, for causes of action and relief against Post Falls Storage Solutions, LLC ("PFSS"), Northwest Grading, Inc. ("Northwest Grading"), and William J. Krick ("Krick") (collectively, "Defendants"), complain and allege as follows:

**INTRODUCTION**

This is an action to ensure public safety and prevent Defendants from continuing to intentionally interfere with GTN's right of way ("ROW") easement over its natural gas pipeline that runs across PFSS's property. Defendants have willfully interfered with GTN's access to the

easement and its pipeline and have violated the express terms of the easement by substantially adding to the ground cover over the pipelines. Defendants have also, with full knowledge of the location of the GTN's pipelines, engaged in activities directly over the pipelines that pose a risk to the integrity of the pipelines.

Despite GTN explaining to Defendants that their actions violate the terms of the easement and present a risk to the integrity of the pipelines buried under the surface of the easement, Defendants continue to interfere with GTN's enjoyment of its property rights and put the safe operation of their pipelines at risk. This action and GTN's request for a temporary restraining order and preliminary injunction are necessary to protect GTN's property rights and ensure public safety.

**PARTIES, VENUE, AND JURISDICTION**

1. Plaintiff GTN is a Delaware limited liability company with its principal office in Houston, Texas. The sole member of GTN is TC Pipelines, LP, a Delaware limited partnership, whose partners are owned entirely through intermediary non-public entities by TC Energy Corporation ("TC Energy"), a publicly held company incorporated in Canada.

2. Defendant PFSS, upon information and belief, is an Idaho limited liability company with its principal office and place of business address being 7778 N Corn Maze Way, Hauser, Idaho. Upon information and belief, all members of PFSS are residents of Idaho.

3. Defendant Northwest Grading, upon information and belief, is a Montana company with its principal office and place of business being 7451 N Corn Maze Way, Hauser, Idaho.

4. Defendant William J. Krick, upon information and belief, is a member of PFSS, the president of Northwest Grading, and is a resident of Idaho. This Court has jurisdiction over this action under Idaho Code Sections 1-705, 5-514, and other applicable laws and rules.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a).

6. Upon information and belief, complete diversity exists between Plaintiff and Defendants.

7. The amount in controversy exceeds $75,000.

8. Venue is proper in this Court because all the events or omissions giving rise to the claim occurred in Idaho.

9. Defendants have also availed themselves of Idaho in several ways, namely PFSS is an Idaho company and both PFSS and Northwest Grading maintain their primary places of business in Idaho.

**GENERAL ALLEGATIONS**

10. GTN owns and operates three underground natural gas pipelines ("the Pipelines") that run generally northeast across a parcel of land, parcel number: 51N05W305920, tract I-KO-146 at the address 7778 Corn Maze Way in Hauser, Idaho ("the Property") currently owned by PFSS.

**AVAILABILITY OF DECLARATORY RELIEF**

11. Except in limited circumstances, which do not apply to this action, this Court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

12. A right-of-way agreement ("the Agreement") establishing the rights and responsibilities of the owner of the Property and the owner/operator of the Pipelines has been in place since October 26, 1960. A copy of the Agreement is attached to the Complaint as **Exhibit 1** and is hereby incorporated into this Complaint.

13. The Agreement was entered into by the Property owners at that time, Charles W. Beck and Alta L. Beck, and Pacific Gas Transmission Company, the owner/operator of the Pipelines.

14. The Agreement grants the owner of the Pipelines an easement with the "right to excavate for, install, replace, maintain, use, and remove such pipeline or lines of any size as second party [the Pipelines owner] shall from time to time elect for conveying natural and artificial gas…together with adequate protection therefor, and also a right-of-way one hundred feet in width…." Ex. 1, p. 2.

15. Within the boundaries of the ROW, the owner of the Property has the right to "use said strip for purposes which will not interfere with second party's [the Pipelines owner's] full enjoyment of the rights hereby granted, provided that first party [the Property owner] shall not… construct any…obstruction on said strip diminish or substantially add to the ground cover over said pipelines." *Id* at p. 3.

16. The Agreement also states that "[t]he provisions hereof shall inure to the benefit of and bind the heirs, successors, and assigns of the respective parties hereto, and all covenants shall apply to and run with the land." *Id*.

17. Pacific Gas Transmission Company became Gas Transmission Northwest Corporation in 2003 and was acquired by TC Energy in 2004. In 2011, Gas Transmission Northwest Corporation became GTN, the Delaware limited liability company that it is today.

18. Upon information and belief, PFSS acquired the Property in August of 2022 from Robert A. Bonucelli.

19. In August of 2022, GTN and TC Energy personnel communicated with Krick about the need for a ROW crossing plan if Krick wanted to move equipment and materials across the Pipelines. GTN and TC Energy personnel also informed Krick that he could only store small amounts of non-combustible material or equipment on the ROW, and only as long as the materials and equipment did not interfere with access to the pipeline.

20. In January of 2023, Defendants began operating heavy industrial equipment within the boundaries of the ROW and on the surface directly over GTN's Pipelines.

21. GTN is responsible, as the owner/operator of the Pipelines running through the Property, for ensuring the safety and integrity of the Pipelines in accordance with Federal regulations. *See* 49 C.F.R. Part 192.

22. Damage to underground pipelines can occur when heavy equipment or materials are being operated or stored directly over the pipelines.

23. As a wholly owned subsidiary, GTN utilizes TC Energy's safety policies and procedures for identifying and marking its underground pipelines before heavy equipment or trucks can cross over a pipeline or construction and excavation can take place near a pipeline.

24. TC Energy's safety policies also require an engineering analysis any time heavy equipment or trucks need to cross over underground pipelines. The engineering analysis is used to determine if the particular equipment that needs to cross over the pipeline presents a risk of

damaging the pipeline and if mitigation actions need to be taken. The depth of the pipeline, the physical properties of the pipeline, the pressure of the gas running through the pipeline, and the characteristics of the heavy equipment or trucks are all factored into this analysis.

25. The engineering analysis generally assumes the heavy equipment will be crossing a pipeline in a perpendicular manner when assessing the risk. This method of crossing the pipeline presents the least amount of risk to the pipeline.

26. Defendants have, on multiple occasions since January 2023, crossed the Pipelines with heavy equipment or trucks and have even parked and operated heavy equipment directly over top of the Pipelines without providing notice to GTN, much less requesting an engineering analysis from GTN before doing so.

27. GTN and TC Energy personnel have observed Defendants' flagrant disregard for the integrity of GTN's Pipelines even after they have explained to Defendants the risk presented to the Pipelines, Defendants' property, and public safety generally by the Defendants operating heavy equipment over top of the Pipelines.

28. In January of 2023, a crane that weighed approximately 80,000 pounds was found parked in the ROW on the surface above the Pipelines.

29. Beginning in February of 2023, large piles of dirt and rock were being built along the western edge of the ROW, encroaching onto the ROW. GTN and TC Energy personnel also observed signs that heavy equipment was being operated within the ROW.

30. In March of 2023, GTN and TC Energy personnel observed a large bulldozer with a ripper attached to it parked in the ROW and saw evidence that the bulldozer had crossed over the Pipelines multiple times.

31. In March of 2023, GTN and TC Energy personnel also observed large piles of logs stacked on top of the surface above the Pipelines.

32. GTN and TC Energy personnel have provided to Defendants a copy of TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way, which are intended, at a minimum, to ensure compliance with federal and state safety requirements; a blank Heavy Equipment Crossing Information Form; and a blank Application to Work on or Within 100 feet of a TC Energy right-of-way. Copies of these three documents are attached to the Complaint as **Exhibits 2**, **3**, and **4** respectively, and are hereby incorporated into this Complaint.

33. GTN and TC Energy personnel have explained to Defendants that they must follow the General Guidelines for Work Within a TC Energy Right-of-Way to ensure adequate protection of the Pipelines and, therefore, public safety and complete the necessary forms if they intend to operate heavy equipment or do other work within the ROW.

34. Defendants have not submitted any Heavy Equipment Crossing Information Forms to GTN or TC Energy before utilizing heavy equipment over the Pipelines, and in March of 2023, Krick informed GTN that he has no intention of submitting said forms because his lawyer informed him that he is not obligated to do so.

35. Since February of 2023, Defendants have been depositing increasingly more dirt and rocks onto the ROW and the surface above GTN's Pipelines. The piles were initially just along the western edge of the ROW with some encroachment onto the ROW—but that began to change in May of 2023.

36. On May 4, 2023, GTN and TC Energy personnel observed large piles of rocks encroaching on the ROW, piles of dirt on the surface above the Pipelines, and a dirt screening plant parked inside the ROW.

37. On June 2, 2023, GTN and TCN Energy personnel found additional heavy equipment inside the ROW, and the dirt screening plant was parked directly over the Pipelines. The dirt screening plant weighs approximately 65,000 pounds and, when in operation, creates vibrations that pose a risk of damaging underground pipelines.

38. On July 28, 2023, GTN and TC Energy personnel observed that the piles of dirt and rock had grown significantly.

39. On August 4, 2023, GTN and TC Energy personnel observed Northwest Grading operating over thirty (30) trucks dumping rocks, gravel, and dirt on the ROW and a heavy bulldozer moving the materials around above the Pipeline.

40. The Defendants had completely covered all three Pipelines and most of the ROW with a massive pile of dirt and gravel that large dump trucks were using as an elevated road.

41. The pile of rock and gravel was approximately thirty (30) to thirty-five (35) feet high, and it covers an area approximately 150 feet in length and almost the entire width of the ROW.

42. GTN and TC Energy personnel informed a project manager for Northwest Grading that Northwest Grading was responsible for requesting permission to operate heavy equipment and store materials in the ROW, and that the materials currently being stored and moved around the ROW needed to be removed.

43. On eighteen (18) different occasions over the past year, Northwest Grading personnel requested GTN mark the location of the Pipelines in the ROW, and Northwest Grading personnel said they understood they could not perform construction or excavation within the ROW without GTN’s approval. But Defendants built the surface of the ROW up by at least thirty (30) feet without GTN’s approval.

44. The materials being stored on top of the Pipelines present a serious risk of damaging the Pipelines and, therefore, a similarly serious risk to public safety. The use of the heavy equipment to transport the materials to the ROW and move the materials around also presents a serious risk of damaging the Pipelines, and, therefore, a similarly serious risk to public safety.

45. The materials being stored on top of the Pipelines add to the ground cover to such a substantial degree, and are of such a fluctuating nature, that GTN is unable to accurately assess the current stress on the Pipelines, but GTN is abundantly concerned that the current stresses on the pipeline far exceed industry safety standards. GTN would have to remove thousands of pounds of dirt and rock placed on top of its Pipelines by Defendants just to gain access to the Pipelines.

46. On August 17, 2023 GTN, through counsel, sent a cease and desist letter to all the members of PFSS, including Krick, demanding that GTN's rights under the Agreement be respected and the unsafe storage of materials over the Pipelines cease.

47. Defendants have not removed the rock, gravel, and logs from the ROW.

48. Instead, Defendant PFSS sent a response to the cease and desist letter, received in the mail by GTN's counsel the day of this filing, "respectfully declin[ing] to comply" with the letter and asserting, among other things, that Defendant PFSS "has not . . . added to ground cover."

49. GTN estimates that it will cost GTN hundreds of thousands of dollars to hire a contractor to remove all of the materials currently being stored on the ROW in a manner that does not create additional dangerous stresses on the Pipelines.

**CLAIM I – DECLARATORY RELIEF**
**(PFSS, Northwest Grading and Krick)**

50. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

51. The Agreement specifically states that within the 100-foot ROW, GTN has the "right to excavate for, install, replace, maintain, use, and remove such pipeline or lines of any size…with adequate protection therefor." Ex. 1, p. 1.

52. The Agreement further states that PFSS may use the ROW land "for purposes which will not interfere" with GTN's "full enjoyment of the rights granted" by the Agreement, and PFSS shall not construct any "obstruction" or "substantially add to the ground cover over said pipelines." *Id.* at 3.

53. Defendants are aware of the Agreement, the ROW, and the location of the Pipelines under its surface.

54. Defendants have no right to use the land within the ROW in a manner that puts GTN's Pipelines at risk, creates obstructions in the ROW, or substantially adds to the ground cover over GTN's Pipelines.

55. GTN has established procedures, including those set forth in TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way, for determining whether activities on the surface above an underground pipeline present a risk to the integrity of underground pipelines.

56. Defendants have received TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way and have intentionally and continuously disregarded them.

57. GTN is entitled to a declaration that Defendants may use the ROW only for activities that do not pose a potential risk of damage to GTN's Pipelines or otherwise interfere with GTN's full enjoyment of its rights under the ROW.

58. GTN is entitled to a declaration that Defendants must follow GTN and TC Energy's policies and get approval from GTN before performing work within 100 feet of the ROW or crossing the Pipelines with heavy equipment.

**CLAIM II – PRIVATE NUISANCE**
**(PFSS, Northwest Grading, and Krick)**

59. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

60. GTN has a property interest in the ROW through which its Pipelines run.

61. Defendants have on multiple occasions, since shortly after PFSS took ownership of the Property, interfered with GTN's comfortable enjoyment of its property interest by operating heavy equipment within the ROW without an engineering analysis and prior authorization from GTN.

62. In May of 2023, Defendants began obstructing and interfering with GTN's comfortable enjoyment of its property interest and safe operation of its Pipelines by storing large piles of logs, rocks, and gravel in the ROW and on top of GTN's Pipelines.

63. Between July 28, 2023 and August 4, 2023, Defendants dramatically changed the landscape of the ROW by trucking in so much dirt, rock, and gravel that the entire width of the ROW is covered with thirty (30) to thirty-five (35) foot piles that extend along the length of the Pipelines for approximately 150 feet.

64. In the cease and desist letters GTN sent to the PFSS and Krick on August 17, 2023, GTN demanded that PFSS and Krick provide a plan for removal of the materials stored in the ROW for GTN review and approval by August 23, 2023.

65. On the day of this filing, GTN's counsel received in the mail a response from Defendant PFSS "respectfully declin[ing] to comply" with the letter and asserting, among other things, that Defendant PFSS "has not . . . added to ground cover."

66. GTN does not have the organic resources to abate the nuisance created by the Defendants and is in the process of contracting with a third-party to safely abate the nuisance.

67. GTN suffered damages in an amount to be proven at trial.

**CLAIM III – BREACH OF CONTRACT**
**(PFSS)**

68. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

69. GTN and PFSS are successors to the Agreement and are bound by the terms and conditions of the Agreement.

70. The Agreement provides GTN the right to install and operate pipelines in the parcel of land defined in the Agreement and ensure the adequate protection of said pipeline operations. *See* Ex. 1., p. 1.

71. The Agreement prohibits PFSS from constructing any obstruction in the ROW and from diminishing or substantially adding to the ground cover over the Pipelines. *Id.* at p. 3.

72. PFSS breached the Agreement by operating heavy equipment and storing thousands of pounds of rock, gravel, and logs in the ROW and over top of GTN's Pipelines.

73. PFSS's actions have interfered with GTN's full enjoyment of its rights under the Agreement by creating obstructions, substantially adding to the ground cover, and interfering with GTN's ability to adequately protect and ensure safe operations of its Pipelines.

74. GTN has suffered damages in an amount to be proven at trial.

**CLAIM III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (PFSS)**

75. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

76. GTN and PFSS are successors to the Agreement and are bound by the terms and conditions of the Agreement.

77. The Agreement created duties of good faith and fair dealing on the part of PFSS.

78. PFSS breached these duties.

79. As a result of PFSS's breach of the implied covenant of good faith and fair dealing, GTN has been damaged and seeks recovery in an amount be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, GTN demands judgment against Defendants as follows:

A. A declaration that the Defendants may use the land within the ROW only for purposes that do not interfere with GTN's access to, and safe operation of, its Pipelines, and that Defendants must follow GTN and TC Energy's policies before crossing the Pipelines with heavy machinery or otherwise working within 100 feet of the ROW.

B. A permanent injunction against the nuisance created by Defendants.

C. Damages against Defendants in in an amount to be proven at trial.

D. An award of GTN's costs and disbursement in this action, including reasonable attorneys' fees, costs, and expenses as provided as allowable under the law.

E. Granting such other relief as this Court may deem just and proper.

DATED: September 11th, 2023.

HOLLAND & HART LLP

By: *<u>/s/ Julie A. Hamilton</u>*
Mary V. York, of the Firm
Julie A. Hamilton, for the Firm
Sam C. Kidd, for the Firm

*Attorneys for Plaintiff*

**VERIFICATION**

STATE OF WASHINGTON )
)ss:
County of Spokane )

I, Ken Flint, declare under penalty of perjury pursuant to the law of the State of Washington that I am the Pacific Mountain Region Land Representative for Gas Transmission Northwest, LLC, that I have read the foregoing Verified Complaint, know the contents thereof, and believe the facts therein stated to be true and correct to the best of my knowledge.

DATED this 11th day of September 2023.

Ken Flint

30458433_v2

PREPARED 1/24/95 PACIFIC GAS TRANSMISSION COMPANY STATE CNTY PRCL SUB
REPORT: OP200R31 PARCEL DATA SHEETS ID - KO - 0146

OWNER: CHARLES W BECK
6055 W HIGHWAY 53
POST FALLS ID
83854

ACQUIRED: 10/26/60

EXPIRATION DATE: NONE

OWNER NO.: 93175

ACTION REQUIRED: NO

| SEQ. | M | TSHP | RANGE | SEC. | LAND DESCRIPTIONS |
|---|---|---|---|---|---|
| 1 | B | 51 N | 5.0 W | 30 | SE4 NW4; N2 SW4; SW4 SW4 |

| SEQ. | RECORDING INFORMATION |
|---|---|
| 01 | ORIG RW 10/26/60 REC 11/10/60 BK 184 PG 53 379843 — O |
| 02 | SUPP AGMT 10/26/60 NOT RECORDED — O |

NL 5/23/94 NOT RECORDED – C — NEED ORIG.
RW AGMNT 10/28/93 REC 11/12/93 Doc. No. 1328715 – O

| SEQ. | CODE | INTEREST IN PROPERTY |
|---|---|---|
| 01 | Z | NON-STANDARD SPECIAL PIPELINE AGREEMENT |
| 02 | X | ROW LOCATION INCLUDED IN AGREEMENT |
| 03 | Z | PHONE: (208) 773-4794 |
| 04 | Z | TENANT: LYNN BODINE |

| SEQ. | SPECIAL PROVISIONS |
|---|---|
| 01 | SEE SUPP AGMT FOR ADDITIONAL CONDITIONS |
| 02 | COMMON USE PMT 76-2 |

NEED ANYTHING

| SEQ. | NOTICE MO/YR | CRITICAL ACTION |
|---|---|---|

BOOK 184 PAGE 53

INDEXED ID-0984 COMPARED TRACED

379843

# RIGHT OF WAY AGREEMENT

CHARLES W. BECK and ALTA L. BECK, husband and wife, hereinafter called first party, in consideration of value paid by PACIFIC GAS TRANSMISSION COMPANY, a California corporation, hereinafter called second party, the adequacy and receipt whereof are hereby acknowledged, hereby grants to second party the right to excavate for, install, replace, maintain, use, and remove such pipeline or lines of any size as second party shall from time to time elect for conveying natural and artificial gas and other gaseous or liquid hydrocarbons and any products or by-products thereof, with necessary valves and other appliances and fittings, and devices for controlling electrolysis in connection with said pipelines, together with adequate protection therefor, and also a right-of-way one hundred feet in width described as follows, to wit:

A part of the Southeast Quarter of the Northwest Quarter and the East Half of the Southwest Quarter and Government Lot 3 and Government Lot 4 in Section 30, Township 51 North, Range 5 West of the Boise Meridian, a strip of land 100 feet wide contiguous with the southerly easement line of the Washington Water Power Company right of way over and across, more particularly described as follows:

Beginning at the SW corner of Section 30 thence S 89° 12' 40" E 25.00 feet along the south line of the SW 1/4 to the east right of way line of the county road; thence N 0° 40' 50" E 1290.02 feet along the east right of way line of the county road, said point being the true point of beginning; thence N 56° 19' 50" E 3110.25 feet to the east line of the SE 1/4 of the NW 1/4, said point being N 0° 18' 50" E 409.42 feet from the SE corner of the SE 1/4 of the NW 1/4; thence N 0° 18' 50" E 120.60 feet along the east line of the SE 1/4 of the NW 1/4 to the southerly easement line of the Washington Water Power Company right of way; thence S 56° 19' 50" W 3109.32 feet along the southerly easement line of the Washington Water Power Company right of way to the east right of way line of the county road; thence S 0° 40' 50" W 121.13 feet to the true point of beginning, situated in Kootenai County, Idaho, containing 7.14 acres.

First party further grants to second party:

(a) the right to use such portion of said lands adjacent to and along said strip as may be reasonably necessary in connection with the installation, repair and replacement of such pipeline or lines;

(b) the right of ingress to and egress from said strip over and across said lands by means of roads and lanes thereon, if such there be, otherwise by such practicable route or routes as shall occasion the least damage and inconvenience to first party;

(c) the right from time to time to trim and to cut down and to clear away any and all trees and brush now or hereafter on said strip and to trim and to cut down and to clear away any

trees on either side of said strip which now or hereafter in the opinion of second party may be a hazard to second party's facilities or may interfere with the exercise of second party's rights hereunder;

(d) the right to install, maintain and use gates in all fences which now cross or shall hereafter cross said strip;

(e) the right to mark the location of said strip by suitable markers set in the ground, provided that said markers shall be placed at fence lines or other locations which will not interfere with any reasonable use first party shall make of said strip.

Second party hereby covenants and agrees:

(a) second party shall pay to first party prior to the construction of the initial pipeline the sum of $100.00 per acre of said lands contained within said strip; provided, however, that the obligation of second party to make any payment hereunder shall be satisfied by tender of such payment to any of the first parties for the benefit of all first parties;

(b) second party shall pay first party the reasonable amount of actual damages to crops, timber, livestock, fences, buildings, private roads, and other improvements caused by it on said lands in the construction or reconstruction of the pipeline or lines or in the exercise of the right of ingress or egress;

(c) second party shall bury its pipe to sufficient depth at time of construction so as not to interfere with first party's cultivation of the soil at said time;

(d) second party shall promptly backfill any trench made by it on said strip and if said lands shall then be cultivated, second party shall restore the surface of the ground, so far as is practicable, to its condition prior to second party's trenching operations;

(e) second party shall indemnify first party against any loss or damage which shall be caused by any wrongful or negligent act or omission of second party or of its agents or employees in the course of their employment.

First party reserves the right to use said strip for purposes which will not interfere with second party's full enjoyment of the rights hereby granted, provided that first party shall not erect or construct any building or other structure, or drill or operate any well, or construct any reservoir or other obstruction on said strip, or diminish or substantially add to the ground cover over said pipelines.

The provisions hereof shall inure to the benefit of and bind the heirs, successors, and assigns of the respective parties hereto, and all covenants shall apply to and run with the land.

BOOK 184 PAGE 55

IN WITNESS WHEREOF the parties have executed these presents this 26 day of October, 1960.

Executed in the presence of

Joe A. Dickerson
Witness

Witness




Charles W. Beck
Charles W. Beck

Alta L. Beck
Alta L. Beck

PACIFIC GAS TRANSMISSION COMPANY

By C. W. Rhoden
Attorney in Fact.

*PERSONAL ACKNOWLEDGMENT*

*STATE OF IDAHO*

*County of* Kootenai

*On this* 26 *day of* October, 19 60, *before me, the undersigned Notary Public, personally appeared* Charles W. Beck and Alta L. Beck *known to me to be the person*S *whose name*S are *subscribed to the within instrument and acknowledged to me that* they *executed the same.*

**IN WITNESS WHEREOF,** *I have hereunto set my hand and affixed my official seal the day and year first above written.*

W. J. Crowley
*Notary Public for Idaho*
*Residing at* Post Falls
*My Commission Expires:* 5-2-61

State of Idaho
County of Kootenai } ss.
Filed for record at the request of Bechtel Corp
on NOV 10 1960
at 4:32 o'clock P. M
and recorded in book
of Page
E. W. LARSON
County Recorder
By Orlida Jakopson
Deputy
Fee $2.75

ID-0984

SUPPLEMENTAL AGREEMENT

This Agreement in Supplement to that Right of Way Agreement between CHARLES W. and ALTA BECK, husband and wife, party of the first part, and PACIFIC GAS TRANSMISSION COMPANY, a California Corporation, party of the second part, dated the 26 day of October, 1960, and recorded in the office of the Kootenai County Recorder, in Book 184, Page 53 of ____________.

WITNESSETH:

The parties hereto do covenant, agree and undertake the following conditions:

1. Construction, operation and maintenance operations of the pipeline shall be confined exclusively to the right of way strip, except where special permission shall be granted unto the party of the second part, its agents and representatives, to undertake activities on adjacent grounds or lands.

2. Any excess sub-surface soil after construction will be removed from the premises, or deposited at a location on the premises designated by the party of the first part.

3. During actual construction, the second party agrees to install ten-foot cattle cross overs at reasonable locations to be designated by the first party., provided, however, said crossings shall be at no closer intervals than 1/4 mile.

4. The surface of the right of way strip will be restored as near as is practical to its original contour and condition.

5. Construction will be completed within six months from the actual commencement of trenching operations upon said lands, excepting, however, delays which may arise unforeseeably as a result of act of God, national calamity, strikes, riots or insurrections. For the purpose of this clause, testing and repair of the line shall not be deemed to be construction as the parties recognize that after installation of said pipeline the need and necessity may arise for the

testing thereof at specific points and places upon the right of way as necessary for the completion of transmission of fuel.

6. The rock encountered by excavation will be replaced in the trench no nearer to the surface than in its original state, and all rock that cannot be so replaced will be removed from the said premises or deposited on the premises at a place designated by first party. The surface of the ground, wherever excavated, will be as free of surface rock as it was in its original state.

7. The words "actual damages to crops" in Paragraph (b) on Page 2 of the said Right of Way Agreement are applicable to losses sustained by first party because of a lessening of productivity of the lands contained within the right of way strip.

8. The rights granted under this easement will be limited to the installation of two pipelines.

9. Payment of any damages is to be made within sixty (60) days after completion of construction, it being understood and agreed that completion of construction will be construed to include the necessary testing of the line installed. In the event such damages are not agreed upon within the sixty (60) days period, the damages will be determined by a Board of Three Arbitrators, one designated by first party, one by second party and the third to be selected by the first two designated. The decision of any two of said arbitrators will be binding upon the parties. The period of arbitration will be limited to sixty (60) days from the date of appointment of the third arbitrator. The costs of arbitration shall be equally shared by the parties.

The parties agree that this instrument, insofar as it is in conflict with any provisions of the Right of Way Agreement herein referred to, shall supersede and control the rights and duties of the parties. In each and every other respect, however, the Right of Way Agreement except as herein modified is reaffirmed.

IN WITNESS WHEREOF, the parties have hereunto subscribed their hands and seals this 26 day of October, 1960.

Charles W. Beck

Alta L. Beck

PACIFIC GAS TRANSMISSION COMPANY

By C. W. Rhodes

FOR RECORDER'S USE ONLY

A09734

Parcel No. I-KO-0146
Beck Road CP Station

# NOTICE OF LOCATION

PACIFIC GAS TRANSMISSION COMPANY, a California corporation, pursuant to the rights conveyed to it by that certain grant of easements dated October 28, 1993 and recorded November 12, 1993 in the Official Records of the County of Kootenai, State of Idaho as Instrument No. 1328715, does hereby further define the location of the strip of the lands described in said grant as follows on the attached Exhibit A.

Nothing herein contained shall, or shall be construed to, modify in any way or terminate any of the rights and obligations of the parties under and by virtue of the said grant of easements in the lands therein described or the said strip thereof.

IN WITNESS WHEREOF, the undersigned has executed these presents this 23rd day of May, 1994.

On Behalf of
PACIFIC GAS TRANSMISSION COMPANY

By William K. Van Heusen
William K. Van Heusen, Land Manager

62-4202 Notary (General) Rev. 8/91

STATE OF California
COUNTY OF San Francisco } SS.

On May 24, 1994 before me, the undersigned, a Notary Public for said State, personally appeared W.K. Van Heusen

[✓] personally known to me -OR- [ ] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Dino Angelosante
Signature

OFFICIAL SEAL
DINO ANGELOSANTE
NOTARY PUBLIC - CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO
My Commission expires June 24, 1994

CAPACITY CLAIMED BY SIGNER

[ ] Individual(s) Signing For Oneself/Themselves
[ ] Corporate Officer(s) of the Above Named Corporation(s)
[ ] Guardian of the Above Named Individual(s)
[ ] Partner(s) of the Above Named Partnership(s)
[ ] Attorney(s)-in-Fact of the Above Named Principal(s)
[ ] Trustee(s) of the Above Named Trust(s)
[X] Other Land Manager - PGT-PG&E Pipeline Expansion Project

A09734

Exhibit A

Robert A. Bonuccelli, et al
I-KO-146
M.P. 105.7
Beck Road CP Station

## Description

A part of Government lot 4 in Section 30, Township 51 North, Range 5 West, Boise Meridian, Kootenai County, Idaho. Being more particularly described as follows:

COMMENCING at the SW corner of Section 30, Thence S 89° 56' 41" E a distance of 30.00 feet, Thence N 00° 00' 19" E a distance of 1077.36 feet along the East Right-of-Way line of Beck Road to the "POINT OF BEGINNING".

THENCE: N 00° 00' 19" E on and along said County Road Right-of-Way a distance of 20.00 feet;

THENCE: S 89° 59' 41" E a distance of 20.00 feet;

THENCE: S 00° 00' 19" W a distance of 20.00 feet;

THENCE: N 89° 59' 41" W a distance of 20.00 feet; to the "POINT OF BEGINNING".

Said parcel of land containing 0.009 acres more or less

Basis of bearing - measured bearing between Southwest corner and Northwest corner of Section 30, T.51 N., R.5 W., Boise Meridian, Kootenai County, Idaho.
Bears: N 00° 11' 00" W.



1328715

PGT ROW No. I-KO-0146
Beck Road CP Station
(M.P. 105.7)

# RIGHT-OF-WAY AGREEMENT

**Meadowhill Corporation, a Washington Corporation; Robert A. Bonuccelli, an unmarried man; James A. Bonuccelli and Jennifer L. Bonuccelli, husband and wife; Geraldine R. Bonuccelli, as her separate estate and Personal Representative of the Estate of Aleck Bonuccelli, Deceased; dba as Bonuccelli Partnership,** hereinafter called the first party, in consideration of value paid by PACIFIC GAS TRANSMISSION COMPANY, a California corporation, hereinafter called second party, the adequacy and receipt whereof are hereby acknowledged, hereby grants to second party the right to excavate for, install, replace, maintain, use, and remove such devices for controlling electrolysis of second party's pipelines, and also a right-of-way within the hereinafter described lands which are situated in the County of Kootenai, State of Idaho, and described as follows:

> A strip of land 20 feet wide and 20 feet long located in the W½ of Section 30, Township 51 North, Range 5 West, B.M., as approximately shown on the drawing attached hereto and by this reference made a part hereof.

Second Party may further define the location of said right-of-way by recording a "Notice of Location" referring to this instrument and setting forth a legal description of the location of said right-of-way, which description may be set by map attached to said Notice. A copy of said Notice shall be delivered to first party.

FIRST PARTY FURTHER GRANTS TO SECOND PARTY:

(a) the right to use such portion of said lands adjacent to and along said right-of-way as may be reasonably necessary in connection with the installation, repair, and replacement of such devices for controlling electrolysis;

(b) the right of ingress to and egress from said right-of-way over and across the said lands by means of roads and lanes thereon, if such there be, otherwise by such practicable route or routes as shall occasion the lease damage and inconvenience to first party;

(c) the right from time to time to trim and to cut down and to clear away any and all trees and brush now or hereafter on said right of way which now or hereafter, in the opinion of the second party, may be a hazard to second party's facilities or may interfere with the exercise of second party's rights hereunder;

(d) the right to install, maintain, and use gates in all fences which now cross or shall hereafter cross said right of way;

PGT ROW No. I-KO-0146
Beck Road CP Station
(M.P. 105.7)

1328715

SECOND PARTY HEREBY COVENANTS AND AGREES:

(a) second party shall pay first party the reasonable amount of actual damages to crops, timber, livestock, fences, buildings, private roads, and other improvements caused by it on said lands in the construction or reconstruction of the devices for controlling electrolysis or in the exercise of the right of ingress or egress;

(b) second party shall indemnify first party against any loss or damage which shall be caused by any wrongful or negligent act or omission of second party or of its agents or employees in the course of their employment.

(c) second party shall install a one (1) foot thick concrete slab over the deep well location to provide additional protection.

First party reserves the right to use said right of way for purposes which will not interfere with second party's full enjoyment of the rights hereby granted, provided that first party shall not erect or construct any building or other structure, or drill or operate any well, or construct any reservoir or other obstruction on said right of way, or diminish or substantially add to the ground cover over said devices for controlling electrolysis.

The provisions hereof shall inure to the benefit of and bind the heirs, successors, and assigns of the respective parties hereto, and all covenants shall apply to and run with the lands.

IN WITNESS WHEREOF the parties have executed these presents this 28th day of ~~August,~~ October 1993. WKVW

Executed in the presence of:

GRANTORS:

____________________________
Witness

[signature]
Meadowhill Corporation,
by Robert A. Bonuccelli, President

1328715

PGT ROW No. I-KO-0146
Beck Road CP Station
(M.P. 105.7)

Witness | Robert A. Bonuccelli

Witness | James A. Bonuccelli

Witness | Jennifer L. Bonuccelli

Witness | Geraldine R. Bonuccelli, a widow

Witness | Geraldine R. Bonuccelli, Personal Representative of the Estate of Aleck Bonuccelli

ON BEHALF OF:

Witness | PACIFIC TRANSMISSION COMPANY
By: WILLIAM K. VAN HEUSEN
(Print name)

C:\WP51\DOCS\AGREEMENT\BONNUCEL.ROW

1328715


I-KO-0147-A
PEGGY L. BECK
BECK ROAD CP STATION
MP 105.7
R.E.U.H. 10/23/92
NOTE: DEEP WELL CASING TO BE CUT & CAPPED APPROX. 3 FEET BELOW SURFACE GRADE WITH VENT PIPE AND CABLE INSTALLED 3 FEET DEEP AND SURFACING AT POLE & RECTIFIER.
91'
30'
OVERHEAD POWERLINE
8½
SEC. 25, T-51-N, R-6-W
SEC. 30, T-51-N, R-5-W
PROPERTY LINE
W.W.P. CO. 230 KV POWERLINE
I-KO-0147-B
M&M INVESTMENT CORP.
A LINE (EXISTING 36" GAS PIPELINE)
B LINE (NEW 42" GAS PIPELINE)
INSTALL NEGATIVE DRAIN JUNCTION BOX
4'
12½
ROAD RIGHT-OF-WAY LINE
INSTALL CABLE
TELEPHONE CABLE BURIED 18" DEEP
I-KO-0146-H
℄ BECK ROAD AND SECTION LINE AND RANGE LINE
I-KO-0146
ROBERT BONUCCELLI
W½ SECTION 30,
T-51-N, R-5-W, B.M.
KOOTENAI CO.,
IDAHO.
200'
1352.11'
1" = 40'
N
FENCE
50'
TEMP. WORK SPACE
50'
20'
20'
10'
15'
INSTALL POLE AND RECTIFIER
INSTALL DEEP WELL ANODE
PERMANENT RIGHT-OF-WAY
SW CORNER SEC. 30
PIPELINE
SITE
IDAHO
WASHINGTON
Beck
MOUNTAIN VIEW TERRACE
Fisher
Grange
Hargrove Ave
20th Ave
16th
12th Ave
T 51 N
T 50 N
State Line Ave
Jacklin Ave
STATE LINE VILLAGE
VICINITY MAP
1" = 6,000'

STATE OF WASHINGTON)
) ss.
COUNTY OF Spokane )

On this day personally appeared before me Robert A. Boruccelli ____________________, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/she free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 28th day of October, 1993.

JERREE YOUNG STATE OF WASHINGTON NOTARY PUBLIC EXPIRES JUNE 01, 1995

Jerree Young
Notary Public in and for the
State of Washington,
residing at Tekoa.

STATE OF WASHINGTON)
) ss.
COUNTY OF Spokane)

On this 28th day of October, 1993, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared Robert A. Boruccelli and ________________ to me known to be the ________ President and ________ Secretary, respectively, of Meadowhill Corporation, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he is authorized to execute the said instrument and that the seal affixed (if any) is the corporate seal of said corporation.

Witness my hand and official seal hereto affixed the day and year first above written.

JERREE YOUNG STATE OF WASHINGTON NOTARY PUBLIC EXPIRES JUNE 01, 1995

Jerree Young
Notary Public in and for the
State of Washington,
Residing at Tekoa.

C:\WP51\DOCS\ACKNOWLE.COR

STATE OF Washington )
) ss.
COUNTY OF Spokane )

On this day personally appeared before me James A. Bonuccelli, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 28th day of October, 1993.

Jerree Young
Notary Public in and for the State of Washington, residing at Tekoa.

STATE OF Washington )
) ss.
COUNTY OF Spokane )

On this day personally appeared before me Jennifer L. Bonuccelli, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 28th day of October, 1993.

Jerree Young
Notary Public in and for the State of Washington, residing at Tekoa.

STATE OF Washington )
) ss.
COUNTY OF Spokane )

On this day personally appeared before me Geraldine R. Bonuccelli, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 28th day of October, 1993.

Jerree Young
Notary Public in and for the State of Washington, residing at Tekoa.

STATE OF IDAHO )
COUNTY OF KOOTENAI ) SS
AT THE REQUEST OF Pipeline Expansion

Nov 12 12 39 PM '93

TOM TAGGART
DEPUTY
FEES 21.00

1328715

STATE OF Washington )
) ss.
COUNTY OF Spokane )

On this day personally appeared before me Geraldine R. Bonucelli Personal Representative to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 28th day of October, 1993.

JERREE YOUNG
STATE OF WASHINGTON
NOTARY PUBLIC
EXPIRES: JUNE 01, 1995

Jerree Young
Notary Public in and for the State of Washington, residing at Deford.

STATE OF California )
) ss.
COUNTY OF San Francisco)

On this day personally appeared before me William K. Van Heusen, to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/they/she signed the same as his/their/her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 8th day of November, 1993.

OFFICIAL SEAL
DINO ANGELOSANTE
NOTARY PUBLIC - CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO
My Commission expires June 24, 1994

Dino Angelosante
Notary Public in and for the State of California, residing at San Francisco.

FOR RECORDER'S USE ONLY

1358838

STATE OF IDAHO } SS
COUNTY OF KOOTENAI }
AT THE REQUEST OF
Pop Van Heusen

JUN 15 12 56 PM '94

T. Outland
FEES 6 00 DEPUTY

Parcel No. I-KO-0146
Beck Road CP Station

# NOTICE OF LOCATION

PACIFIC GAS TRANSMISSION COMPANY, a California corporation, pursuant to the rights conveyed to it by that certain grant of easements dated October 28, 1993 and recorded November 12, 1993 in the Official Records of the County of Kootenai, State of Idaho as Instrument No. 1328715, does hereby further define the location of the strip of the lands described in said grant as follows on the attached Exhibit A.

Nothing herein contained shall, or shall be construed to, modify in any way or terminate any of the rights and obligations of the parties under and by virtue of the said grant of easements in the lands therein described or the said strip thereof.

IN WITNESS WHEREOF, the undersigned has executed these presents this 23rd day of May, 1994.

On Behalf of
PACIFIC GAS TRANSMISSION COMPANY

By William K. Van Heusen
William K. Van Heusen, Land Manager

62-4202 Notary (General) Rev. 8/91

STATE OF California
COUNTY OF San Francisco } ss.

On May 24, 1994 before me, the undersigned, a Notary Public for said State, personally appeared W.K. Van Heusen,

[X] personally known to me -OR- [ ] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Dino Angelosante
Signature

OFFICIAL SEAL
DINO ANGELOSANTE
NOTARY PUBLIC - CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO
My Commission expires June 24, 19[illegible]

CAPACITY CLAIMED BY SIGNER

[ ] Individual(s) Signing For Oneself/Themselves
[ ] Corporate Officer(s) of the Above Named Corporation(s)
[ ] Guardian of the Above Named Individual(s)
[ ] Partner(s) of the Above Named Partnership(s)
[ ] Attorney(s)-in-Fact of the Above Named Principal(s)
[ ] Trustee(s) of the Above Named Trust(s)
[X] Other Land Manager - PGT-PG&E Pipeline Expansion Project

1358838

# Exhibit A

Robert A. Bonuccelli, et al
I-KO-146
M.P. 105.7
Beck Road CP Station

## Description

A part of Government lot 4 in Section 30, Township 51 North, Range 5 West, Boise Meridian, Kootenai County, Idaho. Being more particularly described as follows:

COMMENCING at the SW corner of Section 30, Thence S 89° 56' 41" E a distance of 30.00 feet, Thence N 00° 00' 19" E a distance of 1077.36 feet along the East Right-of-Way line of Beck Road to the "POINT OF BEGINNING".

THENCE: N 00° 00' 19" E on and along said County Road Right-of-Way a distance of 20.00 feet;

THENCE: S 89° 59' 41" E a distance of 20.00 feet;

THENCE: S 00° 00' 19" W a distance of 20.00 feet;

THENCE: N 89° 59' 41" W a distance of 20.00 feet; to the "POINT OF BEGINNING".

Said parcel of land containing 0.009 acres more or less

Basis of bearing - measured bearing between Southwest corner and Northwest corner of Section 30, T.51 N., R.5 W., Boise Meridian, Kootenai County, Idaho.
Bears: N 00° 11' 00" W.

PROFESSIONAL LAND SURVEYOR
REGISTERED
5718
3-31-94
STATE OF IDAHO
ROY A. RUSH







SCALE: 1" = 10'

## DESCRIPTION

A PART OF GOVERNMENT LOT 4 IN SECTION 30, TOWNSHIP 51 NORTH, RANGE 5 WEST, BOISE MERIDIAN, KOOTENAI COUNTY, IDAHO. BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SW CORNER OF SECTION 30 THENCE S 89° 59' 41" E A DISTANCE OF 30.00 FEET, THENCE N 00° 00' 19" E A DISTANCE OF 1077.36 FEET ALONG THE EAST RIGHT-OF-WAY LINE OF BECK ROAD TO THE "POINT OF BEGINNING".

THENCE: N 00° 00' 19" E ON AND ALONG SAID COUNTY ROAD RIGHT-OF-WAY A DISTANCE OF 20.00 FEET;
THENCE: S 89° 59' 41" E A DISTANCE OF 20.00 FEET;
THENCE: S 00° 00' 19" W A DISTANCE OF 20.00 FEET;
THENCE: N 89° 59' 41" W A DISTANCE OF 20.00 FEET;
TO THE "POINT OF BEGINNING"

SAID PARCEL OF LAND CONTAINING 0.009 ACRES MORE OR LESS

## NOTE

1.) BASIS OF BEARING – MEASURED BEARING BETWEEN SOUTHWEST CORNER AND NORTHWEST CORNER OF SEC.30, T.51 N., R.5 W., BOISE MERIDIAN, KOOTENAI COUNTY, IDAHO BEARS: N 00° 11' 00" W







**LAND OWNER**

ROBERT A. BONUCCELLI, ETAL
I-KO-146
BECK ROAD CP STATION

| NO. | DATE | DESCRIPTION | W.O. | DR. | CH. | APPROVALS |
|---|---|---|---|---|---|---|

RECORD OF APPROVALS AND CHANGES

W.O. 7779
SUPV
DSGN
DWN T.G.
CHKD
DATE

## RIGHT-OF-WAY SURVEY

LOCATED IN THE SE 1/4 OF THE NW 1/4 & THE E 1/2 OF THE SW 1/4 & GOV. LOT 3 & LOT 4 IN SEC.30, T.51 N., R.5 W., BOISE MERIDIAN M.P. 105.7

PACIFIC GAS TRANSMISSION COMPANY
SAN FRANCISCO, CALIFORNIA

SCALE 1" = 200'
BILL OF MATERIAL
SUPERSEDES
SHEET 1 OF 1 SHEETS
DRAWING NUMBER
CHANGE

FILE INFO.: 06/10/93 11:30 A.M.

TC Energy

***Involvement status relates solely to facilities owned and/or operated by TC Energy.***

Work within the TC Energy's right-of-way will be performed in accordance with TC Energy procedures to protect the safety of TC Energy's facilities. The following guidelines, although not inclusive, are provided to accommodate your request and protect our pipelines and facilities.

**Section 1: General Requirements for Construction within TC Energy Right-of-Way (ROW).**

1. Follow all applicable federal and state safety requirements at all times.

2. Before any preliminary field work or construction begins in the vicinity of TC Energy pipeline facilities the approximate location and elevation of the pipeline shall be investigated. Begin with a call to 811 or appropriate state "One Call" notification number. Request both the approximate location and depth of the pipeline to be determined in any area of proposed construction. The area of proposed construction shall be marked with white paint, flags, or otherwise as required by state law.

3. When conducting construction activities in or around TC Energy pipeline facilities or rights-of-way, a TC Energy on-site Company Representative shall be present unless otherwise permitted by TC Energy. A TC Energy Representative will review the location of pipeline facilities prior to starting work.

4. Notice of at least seventy-two (72) hours in advance of construction must be provided.

5. Permittee shall notify the responsible State "One Call" center to request that TC Energy re-mark a pipeline if the existing markers are inadequate or no longer visible for any reason, including disturbance due to construction activities.

6. Permittee shall not burn or bury trash, brush, or other items or substances within TC Energy pipeline rights-of-way.

7. Permittee shall not park equipment or store materials on the TC Energy right-of-way.

8. Use of vibratory equipment larger than walk-behind units shall not be permitted within twenty-five (25) feet of the pipeline or related facility.

9. The Permittee shall mark any excavation area with white paint, flags, or as required by applicable state law within TC Energy right-of-way.

10. The following items, but not limited to, are not permitted within the ROW; valves, curb boxes, manholes, sprinkler heads, splice boxes, service risers, energized equipment, poles, towers, guy wires, mechanical supports, ground rods, anchors, signs, bollards, and similar structures.

11. Before excavation can begin near a TC Energy right-of-way, the excavation area must be located and marked in according to the appropriate state one call regulation. Safe digging is no accident. Know what's below. Call 811 before you dig. TC Energy or its representative shall locate the pipeline and determine the approximate depth of cover before the Permittee can begin excavation.

12. TC Energy shall have a Company representative present during all excavation activities. The Company representative shall have full authority to stop the work if it is determined that the work is being performed in an unsafe manner relative to TC Energy facilities or personnel.

13. Should it be necessary for a TC Energy employee/representative to enter the excavation to inspect its pipeline(s), the excavation at the crossing shall be sloped, permitted safe with trench boxes, or shored in accordance with the requirements of the Occupational Safety and Health Administration.

14. No equipment shall work directly over the pipeline, unless TC Energy grants specific written permission. The Permittee shall install temporary fencing along the TC Energy right-of-way boundaries so equipment shall not inadvertently pass over the pipeline at locations other than those established for the crossing.

15. When excavating within a TC Energy right-of-way, in the presence of a loaded pipeline, the Permittee's excavation equipment shall have a plate welded or attached over the teeth of the excavator bucket.

16. No side cutters shall be used during any excavation within a TC Energy ROW.

17. No part of powered equipment shall come within two (2) feet of TC Energy's pipelines, or according to applicable State or Federal requirements.

18. No bucket, any attachment or load may be swung over TC Energy's pipeline(s) where there is less than two (2) feet of cover.

19. TC Energy requires potholing techniques to be used when digging within two (2) feet of the outer edge of the pipe, unless requirements that are more stringent are set forth by the applicable state's One Call system. Within this "tolerance zone" only hand excavation, air cutting, vacuum excavation or other TC Energy approved techniques are permitted.

20. No excavation shall be made on land adjacent to the pipeline that shall in any way impair, withdraw lateral support, cause subsidence, create the accumulation of water, or cause damage to the pipeline or right-of-way.

21. The Permittee shall ensure all excavation work complies with OSHA's excavation standards outlined in 29 CFR 1926 and correct any noncompliant excavation site before work within TC Energy right-of-way continues.

22. At any location where the pipeline is exposed, the Permittee shall provide TC Energy the opportunity to inspect the pipeline condition, install cathodic protection equipment, repair any pipe coating imperfections, and/or install underground warning materials.

23. No TC Energy buried pipeline shall be left exposed for any duration of time, unless otherwise permitted by TC Energy.

24. Backfill and compaction shall be performed to the satisfaction and in the presence of a Company representative. At least 6 inches of fine, loose earth or other permitted backfill material with no sharp gravel, rock, hard clods, vegetation, or other debris shall be added on all sides of any pipeline, and remaining backfill shall be placed so as not to disturb this padding material or damage the pipeline and its coating. Backfill over the pipe shall be compacted by hand until eighteen (18) inches of cover is achieved.

25. If a flowable fill is required by TC Energy to achieve necessary compaction and support under and around the pipe, specifications will be provided after drawing review and approval.

26. Disturbed ground shall be compacted to at least the same degree of compaction as surrounding areas.

27. The Permittee shall restore the site to its original condition unless otherwise permitted by TC Energy.

28. Continuously poured, steel reinforced concrete is not permitted within TC Energy right-of-way.

29. There shall be no work or spoil storage on the TC Energy right-of-way, nor shall there be any unauthorized equipment crossing(s) on the TC Energy right-of-way.

30. The permittee may be crossing one or more of TC Energy's transmission pipeline(s). These pipeline(s) may be coated with a material to protect them from corrosion. The coating may contain asbestos. If the excavation results in exposing TC Energy's pipeline(s) and there is any damage to the coating, you will be responsible for all costs, including any disposal costs, associated with the coating repair. If necessary, you will also be required, to halt all work activity while the coating material is being analyzed. The coating repair, including the removal of the original material, will be performed by TC Energy personnel or a qualified third-party contractor selected by TC Energy. All work will be done in accordance with TC Energy's current engineering and environmental standards. During the course of the excavation work, Contractor agrees to

cooperate with TC Energy to ensure all federal, state and local environmental and safety regulations are followed.

31. The permittee shall submit a Heavy Equipment Crossing Information Form for **all additional** equipment that will operate within the TC Energy right-of-way. No additional equipment will be permitted within the right-of-way without prior approval from TC Energy. The permittee will work with the on-site representative to complete the Heavy Equipment Crossing Information Form.

32. While using the permitted crossing area(s) with heavy equipment, if rutting, any form of ground decay, or ground pumping occurs, additional measures will be required. The additional measures will include but are not limited to: load calculation reassessment, matting/air bridge installment, additional cover, concrete relief slabs, etc.

33. TC Energy shall limit the number of temporary construction roads constructed by the Permittee. Crossings shall be limited to pre-selected sites and shall be clearly defined and marked. Random crossings are not permitted.

34. During the use of a permitted temporary construction road, the Permittee shall take all reasonable and necessary steps to maintain the integrity of the permitted crossing protection. TC Energy personnel should inspect crossings periodically and may require the Permittee to provide additional protective measures deemed necessary to prevent damage to the pipeline or right-of-way.

**Section 2: Requirements for Construction of Roads, Sidewalks, Parking, and Grading**

35. All proposed road crossings of buried facilities must be evaluated by TC Energy. Protective measures may be required before construction activity can begin or during the course of such construction activity.

36. Roads, driveways, and concrete sidewalks must not be permitted to be installed longitudinally within the ROW.

37. Use of vibratory equipment larger than walk-behind units shall not be permitted within twenty-five (25) feet of the pipeline or related facility.

38. Variance of the existing depth of cover is not permitted without TC Energy's written permission. Protective measures may be required before construction activity can begin or during the course of such construction activity.

39. Where additional cover is permitted, the final grading shall meet a minimum cover of three (3) feet over the pipeline but shall not exceed five (5) feet from the top of the pipeline without TC Energy written permission.

40. Detention or retention ponds, lakes, structures or any type of impoundment of water, temporary or permanent, shall not be permitted within the right-of-way.

41. Any modifications to an existing drainage pattern shall be designed so there is no erosion of the cover over TC Energy right-of-way.

42. For drainage channels and ditches where a minimum cover of three (3) feet cannot be maintained, the Permittee shall be responsible for the cost of installation of additional protection required by TC Energy.

43. Roads, driveways, or sidewalks shall cross the right-of-way at as near to ninety (90) degrees as possible, but no less than forty-five (45) degrees.

44. Venting systems shall not be used as a means to extend crossovers or vent parking lots.

45. Concrete sidewalks and/or curbs, shall have expansion joints installed five (5') feet on either side of the pipeline.

46. Asphalt roads shall not be greater than twenty-five (25) feet in width.

47. Parking area(s) shall not be installed within ten (10) feet of TC Energy pipeline facilities.

48. Barriers shall be installed on the edge of the parking area closest to the pipeline.

49. Parking lot "crossovers" may be permitted by TC Energy and shall be no greater than twenty-five (25) feet in width.

50. Parking lot "crossovers" shall be spaced at a minimum of fifty (50) foot intervals (measured from the edge of the crossover). Where fifty (50) feet cannot be maintained additional measures may be required.

**Section 3: Requirements for Walking and Bicycle Paths**

51. Walking/bicycling paths shall be constructed at the outside edge of the TC Energy permanent right-of-way area.

52. Path width within TC Energy rights-of-way shall not exceed six (6) feet.

53. Paths shall cross the TC Energy pipeline as close to ninety (90) degrees as possible, but no less than forty-five (45) degrees.

54. No motorized vehicles of any type, other than power driven wheelchairs, shall utilize paths, which run longitudinally inside the right-of-way.

55. Paving shall be restricted to asphalt only. No concrete paving shall be used for walking and paths.

56. Landowner shall be responsible for maintaining the path to prevent right-of-way damage (including erosion, illegal dumping, etc.) Any change in grade or modifications to existing grade required to control erosion shall be reviewed and approved by TC Energy

**Section 4: Requirements for Construction of Retaining Walls, Fences, Buildings, and Landscaping**

57. Buildings or other structures, including but not limited to overhanging balconies, patios, decks, swimming pools, wells, walls, utility poles, septic systems, propane tanks, transformer pads, or the storage of materials which creates an obstruction or prevents the inspection of the right-of-way by air or foot, shall not be permitted within the TC Energy right-of-way.

58. The Permittee shall not build retaining walls, drive piling or sheeting, or install an engineered structure that may negatively impact the TC Energy right-of-way.

59. The right-of-way area may be planted in lawn, flowerbeds, or vegetable gardens, or used for normal agricultural purposes.

60. Shrubs or ornamental plantings must not be permitted within 10 ft of the pipeline. Plantings outside of 10 ft of the pipeline must be maintained at 5 ft in height or less.

61. Shrubs maturing at more than five feet tall and all trees (including fruit/nut bearing and Christmas tree farms) shall not be permitted within the right-of-way.

62. TC Energy shall not be responsible for replacement of or reimbursement for any plantings within the right-of-way, unless otherwise stated in applicable land rights document.

63. Fence or hedge height may not exceed five (5) feet in height.

64. Fence post shall not be placed within five (5) feet of the outermost edge of the pipeline.

65. Electric fence(s) shall be equipped with insulated handled gate or some type of disconnect, that is available to TC Energy.

66. Conductors for electric fences shall not be placed within fifteen (15) feet of any TC Energy above grade piping with mechanical fittings.

67. Fence(s) shall cross as near to ninety (90) degrees as possible, but no less than forty-five (45) degrees.

68. Fence(s), must be designed and installed to allow at least a sixteen (16) foot gate or opening centered on the pipeline and must cross at or near to 90 degrees as possible, but no less than forty-five (45) degrees.

69. Permittee shall provide TC Energy access through all gates permitted within the TC Energy right-of-way. If Permittee installs locks on said gates, TC Energy shall also be allowed to install its own locks in a manner that allows TC Energy unimpeded access without limiting Permittee's access.

70. Masonry, brick, or stone walls shall not be permitted on the right-of-way.

71. Permittee will allow TC Energy to place pipeline markers at or near, fences, walls or shrubs in order to identify the pipeline route.

**Section 5: Requirements for Utility Crossings**

72. Concrete pipe is not permitted to cross above the TC Energy pipeline.

73. Water valves, curb boxes, manholes, sprinkler heads, splice boxes, service risers, energized equipment, poles, towers, guy wires, mechanical supports, ground rods, anchors and similar structures are not permitted inside the TC Energy ROW.

74. Warning tape shall be placed over the pipe whenever a pipeline is being installed or replaced. A minimum six (6) inch wide tape that follows A.P.W.A. Uniform Color Code shall be placed directly above the buried pipeline, where possible. The tape will be buried at least one (1) foot below the surface of the ground and at least one (1) foot directly above the pipeline.

75. The utility shall cross the TC Energy right-of-way as near to ninety (90) degrees as possible, but no less than forty-five (45) degrees.

76. Utilities shall not be installed longitudinally within the right-of-way.

77. The utility shall maintain the same depth of cover across the entire width of the TC Energy ROW if crossing above the TC Energy pipeline.

78. The utility shall maintain elevation across the entire width of the TC Energy ROW if crossing below the TC Energy pipeline.

79. The utility shall not change direction within the TC Energy ROW.

80. Underground utility crossings shall be marked with proper signage at the edge of the TC Energy right-of-way boundaries. Signage shall be according to the A.P.W.A. Uniform Color Code and comply with the authorities having jurisdiction at the edge of each ROW boundary. Exceptions may include agriculture land or open waters.

**Section 5a: Requirements for non-metallic utilities including water, drains, sewer, and industrial gases installed by open cut excavation.**

81. Utilities shall cross the pipeline with a minimum vertical clearance of two (2) feet for open cut.

82. Non metallic utilities shall be installed with tracer wire for the full width of the TC Energy right-of-way.

83. At locations where tracer wire is installed, tracer wire shall be raised to the ground surface and connected to a test station for monitoring.

84. Natural gas (or other industrial gases) line crossing below the pipeline shall either be encased in a six (6)-inch envelope of yellow 2,000 psi concrete or encased in four (4)-inch minimum diameter, standard wall thickness, coated steel pipe across the full width of the TC Energy right-of-way.

85. Natural gas (or other industrial gases) line permitted by TC Energy to cross above the pipeline shall be encased in 4-inch minimum diameter, standard wall thickness, coated steel pipe across the full width of the TC Energy right-of-way. Do not use concrete for crossings above the pipeline.

**Section 5b: Requirements for metallic utilities including water, drains, sewer, and industrial gases installed by open cut excavation.**

86. Metallic utilities shall be coated with a non-conductive coating for the entire width of the TC Energy right-of-way.

87. Metallic utilities shall cross the pipeline with a minimum vertical clearance of two (2) feet for open cut.

88. Corrosion protection (CP) materials including but not limited to bonds, test leads, test stations, magnesium anode current drains, and permanent reference electrodes shall be installed at the expense of the Permittee.

89. Minimum CP material requirements shall be:
    i. Installation of test leads on both the TC Energy pipeline and the Permittee's crossing structure.
    ii. Installation of a permanent Copper-Copper Sulfate (CuCuSO4) reference electrode between the TC Energy pipeline and the Permittee's crossing structure

90. Permittee shall be responsible for the corrosion protection of its facilities against TC Energy's cathodic protection system. Permittee shall be responsible for installation of facilities on its structures. TC Energy shall provide personnel, at the expense of Permittee, for installation of facilities on TC Energy's pipelines.

91. The permittee will be responsible to work with TC Energy to perform cooperative interference testing of the existing and newly installed corrosion protection systems. Any interference found will be mitigated by the permittee.

**Section 5c: Requirements for electric, fiber optic/cable installed by open cut excavation.**

92. All underground electric under 600V and fiber optic utilities permitted by TC Energy shall cross the pipeline with a minimum vertical clearance of two (2) feet.

93. All underground electric above 600V permitted by TC Energy shall cross the pipeline with a minimum vertical clearance of three (3) feet.

94. All underground electric and fiber optic utilities permitted by TC Energy to cross below the pipeline shall be encased with a minimum of two (2) inch Schedule 40 PVC pipe, or equivalent, for the complete width of the right-of-way **and** also be surrounded with a minimum of six (6) inches of colored concrete in accordance with the A.P.W.A. Uniform Color Code or four (4) inch minimum diameter, standard inch wall thickness, coated steel pipe across the full width of the TC Energy right-of- way.
    i. Underground electric and fiber optic utilities permitted by TC Energy to cross in excess of three (3) feet below the pipeline do not require the use of concrete or an additional conduit.

95. All underground electric and fiber optic utilities permitted by TC Energy to cross above the pipeline shall be encased in two (2) inch minimum diameter Schedule 40 PVC pipe for the complete width of the right-of-way **and** a four (4) inch minimum diameter, standard inch wall thickness, coated steel pipe or Schedule 40 PVC pipe across the full width of the TC Energy right-of-way.

96. Spare conduits that can be identified for future use may be installed. Spare conduits must be installed at the same depth as the main conduit.

97. Conduits must be installed and marked to meet all requirements of the specific type of approved Crossing (e.g., tracer wire, warning tape).

**Section 5c: Requirements for electric, fiber optic/cable installed aboveground.**

98. Aboveground cables shall be installed with a minimum of thirty-three (33) feet above grade clearance for the full width of the TC Energy right-of-way.

99. The design of overhead electrical cables energized to 600 volts or more that cross or parallel within 200 feet of TC Energy’s pipeline(s) must be reviewed and approved by TC Energy. This review may require installation of induced AC mitigation facilities, and additional aerial markers.

100. Unacceptable levels of AC or DC stray current caused by the installation of a foreign utility crossing will be mitigated at the expense of the Permittee.

**Section 5d: Requirements for utilities installed by trenchless excavation.**

101. All utilities installed via trenchless excavation require three (3) feet of clearance from the TC Energy pipeline.

102. Underground utilities permitted by TC Energy to cross in excess of three (3) feet below the pipeline do not require the use of concrete or an additional conduit.

103. Natural gas (or other industrial gases) line permitted by TC Energy to cross above the pipeline shall be encased in 4-inch minimum diameter, standard wall thickness, coated steel pipe across the full width of the TC Energy right-of-way. Do not use concrete for crossings above the pipeline.

104. All underground electric and fiber optic utilities permitted by TC Energy to cross above the pipeline shall be encased in two (2) inch minimum diameter Schedule 40 PVC pipe for the complete width of the right-of-way **and** a four (4) inch minimum diameter, standard inch wall thickness, coated steel pipe or Schedule 40 PVC pipe across the full width of the TC Energy right-of-way.

105. Spare conduits that can be identified for future use may be installed. Spare conduits must be installed at the same depth as the main conduit.

106. Conduits must be installed and marked to meet all requirements of the specific type of approved Crossing (e.g., tracer wire, warning tape).

107. Trenchless excavation requires prior approval with drawings which detail the excavation plan.

108. During trenchless excavation:

- i. A sight inspection hole must be excavated as follows to prevent the drill bit from coming in contact with the pipeline:
  - i. Minimum of 5 ft and a maximum of 10 ft from the side (nearest to the drill) of each buried pipeline
  - ii. Depth at least 36 in. below the bottom of the pipeline
  - iii. Sight inspection holes parallel to the pipeline, a minimum of 10 ft long, and sufficiently wide to provide visual confirmation of the borehead
  - iv. Where the sight inspection hole is not practical, additional requirements may apply, including but not limited to additional vertical clearance
- ii. Centerline of the bore must be marked for trenchless excavation.
- iii. Spoil piles must not be placed over the bore path as this increases the depth of cover.

iv. Any bore pits required to setup and stage equipment must be located outside of the ROW.

v. Tracking equipment is required to track the location of the drill head and must be:
   i. Verified for operability within tolerances
   ii. Field tested on site to confirm operation (the test should be documented by the permittee and approved on-site by the Operations representative)

vi. Continuously monitor the progress of the drill head and ensure it can be visually seen entering the sight inspection holes at the expected depth and location.

vii. If the drill head does not enter the sight inspection hole at the expected depth and location, stop the drill and reassess the bore. Confirm that there are no hazards prior to re-commencing the bore. This may require:
   i. Adjusting the drill head
   ii. Reconfirming the expected centerline of the drill head entry at sight inspection holes
   iii. Enlarging or lengthening sight inspection holes
   iv. Pulling back and restarting the bore where required

**Section 6: Requirements for field tile installation.**

109. Permittee shall execute the Field Tile Agreement, prior to any field tile installations that occur from the edge of TC Energy right of way to the edge of TC Energy right of way. Permitted field tile or drainage pipe shall cross the pipeline right-of-way at or as near to ninety (90) degrees as possible, but no less than forty-five (45) degrees. A minimum clearance of twelve (12) inches above or below the pipeline shall be maintained. Field tile shall not drain onto a TC Energy right-of-way. Longitudinal runs of field tile shall not be within fifteen (15) feet of TC Energy pipelines.

**Section 7: Requirements for Dredging.**

110. Dredging activities within 500 feet of the TC Energy right-of-way shall comply with the following minimum requirements:

i. A TC Energy representative must meet with the Corps of Engineers representative to review the plan.

ii. TC Energy must be contacted at least 72 hours prior to coming within 500 feet of the pipeline.

iii. A TC Energy representative must be on board the vessel when the dredging operation is within 500 feet of the pipeline.

**Section 8: Requirements for Blasting.**

111. Blasting plans shall be submitted ten (10) working days (excludes Saturday, Sunday or federal holiday) prior to the blasting event. It is the responsibility of the Permittee to complete the TC Energy blasting form. It is imperative that a drawing of the blast area be included with the submission of all blasting plans. Review of the blast data shall not be performed until a drawing is submitted showing the location and orientation of all charges relative to the TC Energy pipeline. Any modifications to the blasting plan

must also be submitted to TC Energy for prior review and should not be implemented unless and until TC Energy provides prior written confirmation that it does not object to such modifications. All drawings shall be scalable and show the distance from the charges to the TC Energy pipeline.

112. Permittee shall conduct a three (3) axis seismic survey for each blast event within 300 feet of a TC Energy pipeline, unless otherwise permitted by TC Energy. Seismic equipment shall be placed over the pipeline in the proximity of the closest charge hole to the pipeline, aligning one of the axes parallel to the pipeline and another axis perpendicular to the pipeline.

| TC ENERGY OPERATING PROCEDURE (FORM) | | | | TC Energy |
|---|---|---|---|---|
| Title: Heavy Equipment Crossing Information Form | | | | |
| Revision: 09 | Publish Date: 2021/09/01 | Status Published: | Driver: Best Practice | Page 1 of 3 |

**TOP Contact:** Christine Balash

**Instructions:**

1. This form is to be completed in conjunction with Pipeline Crossing and Encroachment Procedure (US) (Item ID: 003858625) and Pipeline Crossing and Encroachment Procedure (Canada) (Item ID: 003674617).
2. Operations to complete form and send to Land Services or IES Engineer in US or TC Energy Land Department in Canada.
3. Save this form as follows (Steps 2 is only required if you are filing the form electronically).
   - For Canada – For 1st and 2nd party crossing requests, please submit completed form to Integrity_Crossings@TCEnergy.com
   - For US - For minor crossings (Land Services not involved), Operation to file in local office. For major crossings (Land Services is involved), Land Services to file in the Land Tract File database.
4. Information on filing and the onsite/offsite retention requirements, please refer to the 'Facility Filing Structure Reference' compliance list (Item ID: 003794696).

| **Crossing Information** (To be completed by Operations or on-site technician) | |
|---|---|
| **Requesting Company /Stakeholder:** | Ph.: ( ) |
| **TC Energy Contact:** | Ph.: ( ) |
| **Stakeholder Type:** ☐ **Landowner,** ☐ **Contractor,** ☐ **Utility,** ☐ **Developer,** ☐ **Other** (describe) | |
| **Notified How?** ☐ **One Call,** ☐ **Contacted by Landowner,** ☐ **Aerial Patrol,** ☐ **Other** (describe) | |
| **Legal Location / Milepost / MLV:** | |
| **GPS Location (decimal degrees to 7 decimals)** | |
| **Units of Measurement:** ☐ **Imperial (e.g. lbs / ft),** ☐ **Metric (e.g. kg / m),** | |
| **TC Energy PL Drawing #** (if applicable): | |
| ☐ **Permanent Crossing - Date Required:** | |
| ☐ **Temporary Crossing - Approx. Date / Duration:** | |

**Equipment Information** (encroaching party to complete the following table for each piece of heavy equipment)

| | **Equipment Information** | **Equipment #1** | **Equipment #2** | **Equipment #3** | **Equipment #4** |
|---|---|---|---|---|---|
| | **Type or Model of Equipment** | | | | |
| | **Total Weight – Fully Loaded (☐lbs ☐kg)** | | | | |
| **Track** | **Width of Track Shoe (☐ft ☐m)** | | | | |
| **Track** | **Length of Track on Ground (☐ft ☐m)** | | | | |
| **Track** | **Distance Between Tracks (☐ft ☐m)** | | | | |
| **Wheel** | **Number of Wheels (include front)** | | | | |
| **Wheel** | **Number of Axles (include front) axle)** | | | | |
| **Wheel** | **Weight on heaviest axle (☐lbs ☐kg)** | | | | |



**Exhibit 3, Page 1 of 3**

| **Soils Information** (To be completed by Operations or on-site technician, consult engineering if unsure of category) | |
|---|---|
| **Soil Type (Select one)** | ☐ Granular Materials without cohesion (dry sand) / ☐ Sand and Gravel / ☐ Saturated Topsoil / ☐ Clay / ☐ Saturated Clay / ☐ Other (describe): |
| **Soil Saturation Level (Select One)** | ☐ Wet / ☐ Dry / ☐ Normally Dry / ☐ Normally Wet / ☐ Transitional Area Dry to Wet / ☐ Other (describe): |
| **Crossing Type (Select One)** | ☐ Asphalt / ☐ Concrete / ☐ Timber Mats / ☐ No pavement / ☐ Other (describe): |
| **Construction Type if known (Select One)** | ☐ Open Cut / ☐ Bored Crossing / ☐ Open cut-rock / ☐ Other (describe): |

| **Pipeline Information** (To be completed by Operations or on-site technician) | | | | |
|---|---|---|---|---|
| **Pipeline Name** | | | | |
| **Pipeline Route Number** | | | | |
| **Pipeline OD** | | | | |
| **Pipeline Wall Thickness (☐in ☐mm)** | | | | |
| **Pipeline SMYS or Grade (☐psi ☐kPa)** | | | | |
| **Class Location** | | | | |
| **MAOP of Pipeline Segment (☐psi ☐kPa)** | | | | |
| **Coupled, Welded or Threaded pipe joints** | ☐ C ☐ W ☐ T | ☐ C ☐ W ☐ T | ☐ C ☐ W ☐ T | ☐ C ☐ W ☐ T |
| **Existing Depth of Cover (☐in ☐m)** | | | | |
| **Crossing Evaluation (**To be completed by Engineering) | | | | |
| **Evaluation Results % SMYS (US only)** | | | | |
| **Results (Pass or Fail) (US only)** | ☐ pass ☐ fail | ☐ pass ☐ fail | ☐ pass ☐ fail | ☐ pass ☐ fail |
| **Crossing Requirements (none, wood mats, steel plates, air gap, other) (US only)** | ☐ none ☐ wm ☐ sp ☐ ag ☐ o | ☐ none ☐ wm ☐ sp ☐ ag ☐ o | ☐ none ☐ wm ☐ sp ☐ ag ☐ o | ☐ none ☐ wm ☐ sp ☐ ag ☐ o |
| **Evaluated By:** | | | **Date:** | |
| **Additional Crossing Requirements:** | | | | |
| **Note:** If more than four pipelines are being crossed with different attributes please complete this section for the additional lines and attach multiple copies to heavy equipment form. | | | | |

| Please include an explanation, diagram or photos of the crossing equipment using the space provided: |
|---|
| |

**TEF-IN-CROSS-GL Application to Work on or Within 100 ft of TC Energy ROW (US)**

TC Energy

Item ID: 1013361828 Rev.: 01 Driver: Regulatory Status: Published Publish Date: 2021-May-03

| **Instructions for TC Energy Personnel** | | | |
|---|---|---|---|
| 1. Provide this form to the Third Party as per *Pipeline Crossing and Encroachment Procedure (US)* (Item ID: 003858625).<br>2. Maintain electronic signed form in the Tract file database.<br>3. If there is an on-site requirement for the hard copy documentation, please refer to the compliance list in *TransCanada Facility Filing Structure Reference* (Item ID: 003794696) for information on filing this form. | | | |
| **Application Request** | | | |
| Date (yyyy-mm-dd): | Time (am/pm): | Received by: | |
| Legal Location: | GPS Coordinates: | Latitude: | Longitude: |
| Applicants Name: | Representing: | | |
| Mailing Address: | | | |
| Phone Number: | Mobile: | Email: | |
| TC Energy Representative: | | | |
| **Description of Work** | | | |
| Describe in detail the scope of work to be undertaken in the vicinity of TC Energy facilities: | | | |
| Date work is taking place (yyyy-mmm-dd): | | | |
| Location of work taking place (e.g., legal description, address, GPS coordinates.) | | | |
| Will you have to cross TC Energy facilities to conduct work?<br>☐ Yes ☐ No | If yes, request a Heavy Equipment Crossing Information Form (Item ID: 003677225) from TC Energy. | | |
| Will this work involve explosive blasting? ☐ Yes ☐ No | If yes, request an Explosive Blasting Form (Item ID: 005461313) from TC Energy. | | |
| Please complete a sketch describing the proposed crossing, excavation, or construction. Show the positions of aboveground features which can assist us in determining where the work will occur (e.g., fences, roads, buildings, creeks, drains, trees). | | | |

| | |
|---|---|
| Applicant Signature: | Date (yyyy-mm-dd): |
| TC Energy Representative Signature: | |



**Exhibit 4, Page 1**