Mary V. York (ISB #5020)
Julie A. Hamilton (ISB #11708)
Sam C. Kidd (Wyo. State Bar # 8-6879) *pro hac vice* forthcoming
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
myork@hollandhart.com
jahamilton@hollandhart.com
sckidd@hollandhart.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GAS TRANSMISSION NORTHWEST, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> POST FALLS STORAGE SOLUTIONS, LLC, NORTHWEST GRADING, INC. and WILLIAM J. KRICK, <br><br> Defendants. | Case No. _____ <br><br> **VERIFIED COMPLAINT** |

Gas Transmission Northwest, LLC ("GTN"), through its counsel of record, for causes of action and relief against Post Falls Storage Solutions, LLC ("PFSS"), Northwest Grading, Inc. ("Northwest Grading"), and William J. Krick ("Krick") (collectively, "Defendants"), complain and allege as follows:

## INTRODUCTION

This is an action to ensure public safety and prevent Defendants from continuing to intentionally interfere with GTN's right of way ("ROW") easement over its natural gas pipeline that runs across PFSS's property. Defendants have willfully interfered with GTN's access to the

VERIFIED COMPLAINT - 1

easement and its pipeline and have violated the express terms of the easement by substantially adding to the ground cover over the pipelines. Defendants have also, with full knowledge of the location of the GTN's pipelines, engaged in activities directly over the pipelines that pose a risk to the integrity of the pipelines.

Despite GTN explaining to Defendants that their actions violate the terms of the easement and present a risk to the integrity of the pipelines buried under the surface of the easement, Defendants continue to interfere with GTN's enjoyment of its property rights and put the safe operation of their pipelines at risk. This action and GTN's request for a temporary restraining order and preliminary injunction are necessary to protect GTN's property rights and ensure public safety.

## PARTIES, VENUE, AND JURISDICTION

1. Plaintiff GTN is a Delaware limited liability company with its principal office in Houston, Texas. The sole member of GTN is TC Pipelines, LP, a Delaware limited partnership, whose partners are owned entirely through intermediary non-public entities by TC Energy Corporation ("TC Energy"), a publicly held company incorporated in Canada.

2. Defendant PFSS, upon information and belief, is an Idaho limited liability company with its principal office and place of business address being 7778 N Corn Maze Way, Hauser, Idaho. Upon information and belief, all members of PFSS are residents of Idaho.

3. Defendant Northwest Grading, upon information and belief, is a Montana company with its principal office and place of business being 7451 N Corn Maze Way, Hauser, Idaho.

VERIFIED COMPLAINT - 2

4.  Defendant William J. Krick, upon information and belief, is a member of PFSS, the president of Northwest Grading, and is a resident of Idaho. This Court has jurisdiction over this action under Idaho Code Sections 1-705, 5-514, and other applicable laws and rules.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(a).

6.  Upon information and belief, complete diversity exists between Plaintiff and Defendants.

7.  The amount in controversy exceeds $75,000.

8.  Venue is proper in this Court because all the events or omissions giving rise to the claim occurred in Idaho.

9.  Defendants have also availed themselves of Idaho in several ways, namely PFSS is an Idaho company and both PFSS and Northwest Grading maintain their primary places of business in Idaho.

## GENERAL ALLEGATIONS

10. GTN owns and operates three underground natural gas pipelines ("the Pipelines") that run generally northeast across a parcel of land, parcel number: 51N05W305920, tract I-KO-146 at the address 7778 Corn Maze Way in Hauser, Idaho ("the Property") currently owned by PFSS.

## AVAILABILITY OF DECLARATORY RELIEF

11. Except in limited circumstances, which do not apply to this action, this Court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

VERIFIED COMPLAINT - 3

Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

12.     A right-of-way agreement ("the Agreement") establishing the rights and responsibilities of the owner of the Property and the owner/operator of the Pipelines has been in place since October 26, 1960. A copy of the Agreement is attached to the Complaint as **Exhibit 1** and is hereby incorporated into this Complaint.

13.     The Agreement was entered into by the Property owners at that time, Charles W. Beck and Alta L. Beck, and Pacific Gas Transmission Company, the owner/operator of the Pipelines.

14.     The Agreement grants the owner of the Pipelines an easement with the "right to excavate for, install, replace, maintain, use, and remove such pipeline or lines of any size as second party [the Pipelines owner] shall from time to time elect for conveying natural and artificial gas…together with adequate protection therefor, and also a right-of-way one hundred feet in width…." Ex. 1, p. 2.

15.     Within the boundaries of the ROW, the owner of the Property has the right to "use said strip for purposes which will not interfere with second party's [the Pipelines owner's] full enjoyment of the rights hereby granted, provided that first party [the Property owner] shall not… construct any…obstruction on said strip diminish or substantially add to the ground cover over said pipelines." *Id* at p. 3.

16.     The Agreement also states that "[t]he provisions hereof shall inure to the benefit of and bind the heirs, successors, and assigns of the respective parties hereto, and all covenants shall apply to and run with the land." *Id*.

VERIFIED COMPLAINT - 4

17. Pacific Gas Transmission Company became Gas Transmission Northwest Corporation in 2003 and was acquired by TC Energy in 2004. In 2011, Gas Transmission Northwest Corporation became GTN, the Delaware limited liability company that it is today.

18. Upon information and belief, PFSS acquired the Property in August of 2022 from Robert A. Bonucelli.

19. In August of 2022, GTN and TC Energy personnel communicated with Krick about the need for a ROW crossing plan if Krick wanted to move equipment and materials across the Pipelines. GTN and TC Energy personnel also informed Krick that he could only store small amounts of non-combustible material or equipment on the ROW, and only as long as the materials and equipment did not interfere with access to the pipeline.

20. In January of 2023, Defendants began operating heavy industrial equipment within the boundaries of the ROW and on the surface directly over GTN's Pipelines.

21. GTN is responsible, as the owner/operator of the Pipelines running through the Property, for ensuring the safety and integrity of the Pipelines in accordance with Federal regulations. *See* 49 C.F.R. Part 192.

22. Damage to underground pipelines can occur when heavy equipment or materials are being operated or stored directly over the pipelines.

23. As a wholly owned subsidiary, GTN utilizes TC Energy's safety policies and procedures for identifying and marking its underground pipelines before heavy equipment or trucks can cross over a pipeline or construction and excavation can take place near a pipeline.

24. TC Energy's safety policies also require an engineering analysis any time heavy equipment or trucks need to cross over underground pipelines. The engineering analysis is used to determine if the particular equipment that needs to cross over the pipeline presents a risk of

damaging the pipeline and if mitigation actions need to be taken. The depth of the pipeline, the physical properties of the pipeline, the pressure of the gas running through the pipeline, and the characteristics of the heavy equipment or trucks are all factored into this analysis.

25. The engineering analysis generally assumes the heavy equipment will be crossing a pipeline in a perpendicular manner when assessing the risk. This method of crossing the pipeline presents the least amount of risk to the pipeline.

26. Defendants have, on multiple occasions since January 2023, crossed the Pipelines with heavy equipment or trucks and have even parked and operated heavy equipment directly over top of the Pipelines without providing notice to GTN, much less requesting an engineering analysis from GTN before doing so.

27. GTN and TC Energy personnel have observed Defendants' flagrant disregard for the integrity of GTN's Pipelines even after they have explained to Defendants the risk presented to the Pipelines, Defendants' property, and public safety generally by the Defendants operating heavy equipment over top of the Pipelines.

28. In January of 2023, a crane that weighed approximately 80,000 pounds was found parked in the ROW on the surface above the Pipelines.

29. Beginning in February of 2023, large piles of dirt and rock were being built along the western edge of the ROW, encroaching onto the ROW. GTN and TC Energy personnel also observed signs that heavy equipment was being operated within the ROW.

30. In March of 2023, GTN and TC Energy personnel observed a large bulldozer with a ripper attached to it parked in the ROW and saw evidence that the bulldozer had crossed over the Pipelines multiple times.

31. In March of 2023, GTN and TC Energy personnel also observed large piles of logs stacked on top of the surface above the Pipelines.

32. GTN and TC Energy personnel have provided to Defendants a copy of TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way, which are intended, at a minimum, to ensure compliance with federal and state safety requirements; a blank Heavy Equipment Crossing Information Form; and a blank Application to Work on or Within 100 feet of a TC Energy right-of-way. Copies of these three documents are attached to the Complaint as **Exhibits 2**, **3**, and **4** respectively, and are hereby incorporated into this Complaint.

33. GTN and TC Energy personnel have explained to Defendants that they must follow the General Guidelines for Work Within a TC Energy Right-of-Way to ensure adequate protection of the Pipelines and, therefore, public safety and complete the necessary forms if they intend to operate heavy equipment or do other work within the ROW.

34. Defendants have not submitted any Heavy Equipment Crossing Information Forms to GTN or TC Energy before utilizing heavy equipment over the Pipelines, and in March of 2023, Krick informed GTN that he has no intention of submitting said forms because his lawyer informed him that he is not obligated to do so.

35. Since February of 2023, Defendants have been depositing increasingly more dirt and rocks onto the ROW and the surface above GTN's Pipelines. The piles were initially just along the western edge of the ROW with some encroachment onto the ROW—but that began to change in May of 2023.

36. On May 4, 2023, GTN and TC Energy personnel observed large piles of rocks encroaching on the ROW, piles of dirt on the surface above the Pipelines, and a dirt screening plant parked inside the ROW.

VERIFIED COMPLAINT - 7

37. On June 2, 2023, GTN and TCN Energy personnel found additional heavy equipment inside the ROW, and the dirt screening plant was parked directly over the Pipelines. The dirt screening plant weighs approximately 65,000 pounds and, when in operation, creates vibrations that pose a risk of damaging underground pipelines.

38. On July 28, 2023, GTN and TC Energy personnel observed that the piles of dirt and rock had grown significantly.

39. On August 4, 2023, GTN and TC Energy personnel observed Northwest Grading operating over thirty (30) trucks dumping rocks, gravel, and dirt on the ROW and a heavy bulldozer moving the materials around above the Pipeline.

40. The Defendants had completely covered all three Pipelines and most of the ROW with a massive pile of dirt and gravel that large dump trucks were using as an elevated road.

41. The pile of rock and gravel was approximately thirty (30) to thirty-five (35) feet high, and it covers an area approximately 150 feet in length and almost the entire width of the ROW.

42. GTN and TC Energy personnel informed a project manager for Northwest Grading that Northwest Grading was responsible for requesting permission to operate heavy equipment and store materials in the ROW, and that the materials currently being stored and moved around the ROW needed to be removed.

43. On eighteen (18) different occasions over the past year, Northwest Grading personnel requested GTN mark the location of the Pipelines in the ROW, and Northwest Grading personnel said they understood they could not perform construction or excavation within the ROW without GTN's approval. But Defendants built the surface of the ROW up by at least thirty (30) feet without GTN's approval.

44. The materials being stored on top of the Pipelines present a serious risk of damaging the Pipelines and, therefore, a similarly serious risk to public safety. The use of the heavy equipment to transport the materials to the ROW and move the materials around also presents a serious risk of damaging the Pipelines, and, therefore, a similarly serious risk to public safety.

45. The materials being stored on top of the Pipelines add to the ground cover to such a substantial degree, and are of such a fluctuating nature, that GTN is unable to accurately assess the current stress on the Pipelines, but GTN is abundantly concerned that the current stresses on the pipeline far exceed industry safety standards. GTN would have to remove thousands of pounds of dirt and rock placed on top of its Pipelines by Defendants just to gain access to the Pipelines.

46. On August 17, 2023 GTN, through counsel, sent a cease and desist letter to all the members of PFSS, including Krick, demanding that GTN's rights under the Agreement be respected and the unsafe storage of materials over the Pipelines cease.

47. Defendants have not removed the rock, gravel, and logs from the ROW.

48. Instead, Defendant PFSS sent a response to the cease and desist letter, received in the mail by GTN's counsel the day of this filing, "respectfully declin[ing] to comply" with the letter and asserting, among other things, that Defendant PFSS "has not . . . added to ground cover."

49. GTN estimates that it will cost GTN hundreds of thousands of dollars to hire a contractor to remove all of the materials currently being stored on the ROW in a manner that does not create additional dangerous stresses on the Pipelines.

## CLAIM I – DECLARATORY RELIEF
### (PFSS, Northwest Grading and Krick)

50. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

51. The Agreement specifically states that within the 100-foot ROW, GTN has the "right to excavate for, install, replace, maintain, use, and remove such pipeline or lines of any size…with adequate protection therefor." Ex. 1, p. 1.

52. The Agreement further states that PFSS may use the ROW land "for purposes which will not interfere" with GTN's "full enjoyment of the rights granted" by the Agreement, and PFSS shall not construct any "obstruction" or "substantially add to the ground cover over said pipelines." *Id*. at 3.

53. Defendants are aware of the Agreement, the ROW, and the location of the Pipelines under its surface.

54. Defendants have no right to use the land within the ROW in a manner that puts GTN's Pipelines at risk, creates obstructions in the ROW, or substantially adds to the ground cover over GTN's Pipelines.

55. GTN has established procedures, including those set forth in TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way, for determining whether activities on the surface above an underground pipeline present a risk to the integrity of underground pipelines.

56. Defendants have received TC Energy's General Guidelines for Work Within a TC Energy Right-of-Way and have intentionally and continuously disregarded them.

VERIFIED COMPLAINT - 10

57. GTN is entitled to a declaration that Defendants may use the ROW only for activities that do not pose a potential risk of damage to GTN's Pipelines or otherwise interfere with GTN's full enjoyment of its rights under the ROW.

58. GTN is entitled to a declaration that Defendants must follow GTN and TC Energy's policies and get approval from GTN before performing work within 100 feet of the ROW or crossing the Pipelines with heavy equipment.

## CLAIM II – PRIVATE NUISANCE
### (PFSS, Northwest Grading, and Krick)

59. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

60. GTN has a property interest in the ROW through which its Pipelines run.

61. Defendants have on multiple occasions, since shortly after PFSS took ownership of the Property, interfered with GTN's comfortable enjoyment of its property interest by operating heavy equipment within the ROW without an engineering analysis and prior authorization from GTN.

62. In May of 2023, Defendants began obstructing and interfering with GTN's comfortable enjoyment of its property interest and safe operation of its Pipelines by storing large piles of logs, rocks, and gravel in the ROW and on top of GTN's Pipelines.

63. Between July 28, 2023 and August 4, 2023, Defendants dramatically changed the landscape of the ROW by trucking in so much dirt, rock, and gravel that the entire width of the ROW is covered with thirty (30) to thirty-five (35) foot piles that extend along the length of the Pipelines for approximately 150 feet.

VERIFIED COMPLAINT - 11

64. In the cease and desist letters GTN sent to the PFSS and Krick on August 17, 2023, GTN demanded that PFSS and Krick provide a plan for removal of the materials stored in the ROW for GTN review and approval by August 23, 2023.

65. On the day of this filing, GTN's counsel received in the mail a response from Defendant PFSS "respectfully declin[ing] to comply" with the letter and asserting, among other things, that Defendant PFSS "has not . . . added to ground cover."

66. GTN does not have the organic resources to abate the nuisance created by the Defendants and is in the process of contracting with a third-party to safely abate the nuisance.

67. GTN suffered damages in an amount to be proven at trial.

### CLAIM III – BREACH OF CONTRACT
### (PFSS)

68. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

69. GTN and PFSS are successors to the Agreement and are bound by the terms and conditions of the Agreement.

70. The Agreement provides GTN the right to install and operate pipelines in the parcel of land defined in the Agreement and ensure the adequate protection of said pipeline operations. *See* Ex. 1., p. 1.

71. The Agreement prohibits PFSS from constructing any obstruction in the ROW and from diminishing or substantially adding to the ground cover over the Pipelines. *Id*. at p. 3.

72. PFSS breached the Agreement by operating heavy equipment and storing thousands of pounds of rock, gravel, and logs in the ROW and over top of GTN's Pipelines.

73. PFSS's actions have interfered with GTN's full enjoyment of its rights under the Agreement by creating obstructions, substantially adding to the ground cover, and interfering with GTN's ability to adequately protect and ensure safe operations of its Pipelines.

74. GTN has suffered damages in an amount to be proven at trial.

## CLAIM III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (PFSS)

75. GTN incorporates by reference and realleges each and every allegation in the preceding paragraphs as though fully set forth herein.

76. GTN and PFSS are successors to the Agreement and are bound by the terms and conditions of the Agreement.

77. The Agreement created duties of good faith and fair dealing on the part of PFSS.

78. PFSS breached these duties.

79. As a result of PFSS's breach of the implied covenant of good faith and fair dealing, GTN has been damaged and seeks recovery in an amount be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, GTN demands judgment against Defendants as follows:

A.  A declaration that the Defendants may use the land within the ROW only for purposes that do not interfere with GTN's access to, and safe operation of, its Pipelines, and that Defendants must follow GTN and TC Energy's policies before crossing the Pipelines with heavy machinery or otherwise working within 100 feet of the ROW.

B.  A permanent injunction against the nuisance created by Defendants.

C.  Damages against Defendants in in an amount to be proven at trial.

VERIFIED COMPLAINT - 13

D.   An award of GTN's costs and disbursement in this action, including reasonable attorneys' fees, costs, and expenses as provided as allowable under the law.

E.   Granting such other relief as this Court may deem just and proper.

DATED: September 11th, 2023.

        HOLLAND & HART LLP

        By:   */s/ Julie A. Hamilton*
            Mary V. York, of the Firm
            Julie A. Hamilton, for the Firm
            Sam C. Kidd, for the Firm

        *Attorneys for Plaintiff*

## VERIFICATION

STATE OF WASHINGTON )
                                   )ss:
County of Spokane          )

        I, Ken Flint, declare under penalty of perjury pursuant to the law of the State of Washington that I am the Pacific Mountain Region Land Representative for Gas Transmission Northwest, LLC, that I have read the foregoing Verified Complaint, know the contents thereof, and believe the facts therein stated to be true and correct to the best of my knowledge.

        DATED this 11th day of September 2023.

                                                    _____
                                                    Ken Flint

30458433_v2

VERIFIED COMPLAINT - 15